

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

        v.                                     15-CR-142-W

GLEN STACHARCZYCK a/k/a Turbo,

                Defendant.

## PLEA AGREEMENT

The defendant, **GLEN STACHARCZYCK a/k/a Turbo**, and the United States

Attorney for the Western District of New York (hereinafter "the government") hereby enter

into a plea agreement with the terms and conditions as set out below.

## I.     THE PLEA AND POSSIBLE SENTENCE

1.     The defendant agrees to plead guilty to Count 1 of the Second Superseding

Indictment, which charges a violation of Title 18, United States Code, Section 1962(d) (RICO

conspiracy), for which the maximum possible sentence is a term of imprisonment of 20 years,

a fine of $250,000, a mandatory $100 special assessment, and a term of supervised release of

at least three years.  The defendant understands that the penalties set forth in this paragraph

are the maximum penalties that can be imposed by the Court at sentencing.

2.     The defendant understands that, if it is determined that the defendant has

violated any of the terms or conditions of supervised release, the defendant may be required

to serve in prison all or part of the term of supervised release, up to two (2) years, without

credit for time previously served on supervised release.  As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in ¶ 1 of this agreement.

## II.     ELEMENTS AND FACTUAL BASIS

3.     The defendant understands the nature of the offenses set forth in ¶ 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

a.     That there was an enterprise, as described in the Second Superseding Indictment, consisting of a group of persons associated together for a common purpose of engaging in a course of conduct;

b.     That the enterprise engaged in, or its activities in some way affected, interstate or foreign commerce;

c.     That the defendant was employed by or associated with the enterprise; and

d.     That the defendant knowingly and intentionally entered into an agreement that a conspirator would conduct, or participate in the conduct of, the affairs of the enterprise though a pattern of racketeering activity.

## FACTUAL BASIS

4.     The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct:

a.     The Kingsmen Motorcycle Club ("KMC") was founded in Lockport, New York in 1959 and continues to operate today.  As set forth in the Second Superseding Indictment, the KMC was a criminal organization whose leadership, members, and associates constituted an enterprise, as defined by Title 18, United States Code, Section 1961(4), that is, a group

2

of individuals associated in fact, the activities of which affected interstate and foreign commerce.

b.    The purposes of the KMC included the following: promoting and enhancing the enterprise and its members and associates' activities, including, but not limited to, distribution of controlled substances, maintaining premises for use and distribution of controlled substances, possession, use, and sale of firearms, sale of untaxed cigarettes ,and other criminal activities including promoting prostitution; preserving and protecting the power, territory, and reputation of the enterprise and its' members through intimidation, violence, threats of violence, assaults, murder, and attempted murder; placing victims, potential victims, potential witnesses, and others in fear of the enterprise, its members, and associates, through violence and threats of violence; and generating and maximizing the profits, reputation, and membership of the enterprise from a variety of illegal activity, including, but not limited to, drug trafficking, firearm sales, sale of untaxed cigarettes, sale of alcohol, gambling, robbery, and prostitution.

c.    The KMC operates in New York, Pennsylvania, Tennessee, and Florida.  Each KMC member and chapter paid dues to the KMC National, which was located in the State of Florida.  KMC Chapters routinely sold alcohol, and untaxed cigarettes for profits, which they attempted to mask by calling them "donations."  The KMC also permitted gambling inside KMC Chapter clubhouses, and promoted unlawful "stripper parties" and sexual activities inside KMC Chapter clubhouses.

d.    The defendant, GLEN STACHARCZYCK a/k/a Turbo, was a member of the North Tonawanda KMC Chapter between 2009 and 2016.  The defendant admits that, at various times during the RICO Conspiracy alleged in Count 1 of the Second Superseding Indictment, KMC members and associates of the KMC used marijuana, cocaine, methamphetamine, and other controlled substances in and around the North Tonawanda KMC Chapter Clubhouse.  The defendant further acknowledges that he knew that KMC members were involved in the use and distribution of cocaine, marijuana, and other controlled substances.  The defendant further admits that he possessed firearms, and that KMC members maintained access to firearms, and KMC members possessed and maintained firearms on their person and inside KMC Chapter Clubhouses, including the North Tonawanda KMC Chapter Clubhouse.  KMC members were also involved in firearm sales at various times.  The defendant admits that the activities at the North Tonawanda KMC Chapter Clubhouse, including the sale and distribution of alcohol, cocaine, and other controlled substances, firearms sales and possession, payment of dues, and the interstate activities and coordination by the KMC affect interstate commerce.  The

3

parties agree that after converting the amount of cocaine, marijuana and the controlled substances involved in the offense, at least 60 kilograms but less than 80 kilograms of marijuana is the amount involved in the defendant's relevant conduct encompassed in Count 1 of the Second Superseding Indictment which could be readily proven by the government against the defendant.

e.    The defendant further admits that, at various times during the RICO Conspiracy alleged in Count 1 of the Second Superseding Indictment, KMC members and associates of the KMC used marijuana, cocaine, methamphetamine, and other controlled substances in and around the South Buffalo KMC Chapter Clubhouse.   The defendant further acknowledges that he knew that KMC members were involved in the use and distribution of cocaine, marijuana, and other controlled substances.  The defendant further admits that he possessed firearms, and that KMC members maintained access to firearms, and KMC members possessed and maintained firearms on their person and inside KMC Chapter Clubhouses, including the South Buffalo KMC Chapter Clubhouse.  KMC members were also involved in firearm sales at various times.  The defendant admits that the activities at the South Buffalo KMC Chapter Clubhouse, including the sale and distribution of alcohol, cocaine, and other controlled substances, firearms sales and possession, payment of dues, and the interstate activities and coordination by the KMC affect interstate commerce.  The parties agree that after converting the amount of cocaine, marijuana and the controlled substances involved in the offense, at least 60 kilograms but less than 80 kilograms of marijuana is the amount involved in the defendant's relevant conduct encompassed in Count 1 of the Second Superseding Indictment which could be readily proven by the government against the defendant.

f.    The defendant admits that the KMC follows a strict chain of command. David Pirk was the National KMC President for the majority of the time the defendant was in the KMC.  The KMC chain of command involved the National President passing down orders to the Regional Presidents; Regional Presidents passed down orders to the Chapter Presidents; and Chapter Presidents passed down orders to the Chapter Officers and members.   KMC Nomads served as the discretion of the National President.

g.    The above facts are set forth for the limited purpose of complying with Rule 11(b)(3) and are not intended to serve as a complete statement of the defendant's criminal conduct.

4

### III.   SENTENCING GUIDELINES

5.   The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

### BASE OFFENSE LEVELS

6.   The government and the defendant agree that Guidelines §§ 2E1.1(a)(2), 2D1.8(a)(1), 2D1.1(a)(5), 2D1.1(b)(1), 2D1.1(b)(12), and 2D1.1(c)(10) apply to ¶ 5(d), above, and provide for a base offense level of **24**.

7.   The government and the defendant agree that Guidelines §§ 2E1.1(a)(2), 2D1.8(a)(1), 2D1.1(a)(5), 2D1.1(b)(1), 2D1.1(b)(12), and 2D1.1(c)(10) apply to ¶ 5(e), above, and provide for a base offense level of **24.**

### ADJUSTED OFFENSE LEVEL

8.   Based on ¶¶ 6 through 8 of this agreement and Guidelines § 3D1.4, it is the understanding of the government and the defendant that the defendant's combined adjusted offense level is **26**.

### ACCEPTANCE OF RESPONSIBILITY

9.   At sentencing, the government agrees not to oppose the recommendation that the Court apply the two (2) level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees, if applicable, to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **23**.

## CRIMINAL HISTORY CATEGORY

10.     It is the understanding of the government and the defendant that the defendant's criminal history category is **I**.  The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase.  The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

11.     It is the understanding of the government and the defendant that, with a total offense level of **23** and criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **46** to **57** months, a fine of **$20,000** to **$200,000**, and a period of supervised release of **1** to **3** years.  Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the minimum and maximum penalties set forth in ¶ 1 of this agreement.

12.     The government and the defendant agree to the correctness of the calculation of the Sentencing Guidelines range set forth above.  The government and the defendant, however, reserve the right to recommend a sentence outside the Sentencing Guidelines range. This paragraph reserves the right to the government and the defendant to bring to the attention of the Court all information deemed relevant to a determination of the proper sentence in this action.

13.     The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV.   STATUTE OF LIMITATIONS

14.     In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre- or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other federal criminal offense which is not time barred as of the date of this agreement.  This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V.   GOVERNMENT RIGHTS AND RESERVATIONS

15.     At sentencing, the government agrees to take no position as to the specific sentence within the Guidelines range determined by the Court.

16.     The defendant understands that the government has reserved the right to:

a.      provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

b.      respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

c.    advocate for a specific sentence consistent with the terms of this agreement including the amount of a fine and the method of payment; and

d.    modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

17.    At sentencing, the government agrees to dismiss the open counts of the Second Superseding Indictment as against the defendant.

18.    The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

## VI.    <u>APPEAL RIGHTS</u>

19.    The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed.  The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶11, above, notwithstanding the manner in which the Court determines the sentence.  In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence.

20.     The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

21.     The government waives its right to appeal any component of a sentence imposed by the Court which falls within or is greater than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶11, above, notwithstanding the manner in which the Court determines the sentence.  However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.


## VII.   TOTAL AGREEMENT AND AFFIRMATIONS

22.     This plea agreement represents the total agreement between the defendant, **GLEN STACHARCZYCK a/k/a Turbo**, and the government.  There are no promises made by anyone other than those contained in this agreement.  This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY, JR.
United States Attorney
Western District of New York

BY: _____
JOSEPH M. TRIPI
Assistant United States Attorney

Dated: July _13_, 2018

9

I have read this agreement, which consists of 10 pages.  I have had a full opportunity to discuss this agreement with my attorney, Mehmet K. Okay, Esq.  I agree that it represents the total agreement reached between myself and the government.  No promises or representations have been made to me other than what is contained in this agreement.  I understand all of the consequences of my plea of guilty.  I fully agree with the contents of this agreement.  I am signing this agreement voluntarily and of my own free will.


GLEN STACHARCZYCK
Defendant

Dated: July _13_, 2018

MEHMET K. OKAY, ESQ.
Attorney for the Defendant

Dated: July 13, 2018