UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————

GLENN STACHARCZYK
a/k/a Turbo,                                                    **DECISION AND ORDER**

                          Petitioner,              1:15-cr-00142 EAW
                                                   1:21-cv-01055 EAW
            v.

UNITED STATES OF AMERICA,

                          Defendant.

———————————————————

# I.    **INTRODUCTION**

*Pro se* petitioner Glenn Stacharczyk a/k/a Turbo ("Petitioner") has filed a motion

pursuant to 28 U.S.C. § 2255 seeking to vacate, set aside, or correct the sentence imposed

pursuant to a plea agreement.  (Dkt. 1941).[1]  Petitioner seeks a resentencing "after

recalculating Guidelines to remove inappropriate enhancements."  (*Id*. at 12).  Petitioner

raises two grounds for relief, both of which allege ineffective assistance of counsel in

connection with sentencing.  (*Id*. at 4, 5).  The government has filed a response in

opposition to the petition.  (Dkt. 1947).  Because Petitioner's claims are barred by the

collateral attack waiver contained in the plea agreement, and because even if not barred,

Petitioner fails to satisfy the standard set forth in *Strickland v. Washington*, 466 U.S. 668

(1984), the petition is denied.

---

[1]      All references to the docket in the instant Decision and Order are to the docket in
Criminal Action No. 1:15-CR-00142 EAW.

## II.    <u>BACKGROUND</u>

On March 16, 2016, Petitioner was charged in six counts of a 46-count second superseding indictment with the following: (1) a RICO[2] conspiracy in violation of 18 U.S.C. § 1961(d) (count one); (2) possession of firearms in further of the RICO conspiracy in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (count two); (3) using and maintaining premises for drug dealing in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (counts thirty-nine and forty-five); and (4) possession of firearms in furtherance of the maintaining the premises charges in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (counts forty and forty-six).  (Dkt. 33).  The charges related to the operation of the Kingsmen Motorcycle Club ("KMC").  Petitioner served as President of the North Tonawanda KMC Chapter at the time two execution-style murders occurred at that chapter's clubhouse property on September 6, 2014.  (*See* Dkt. 1720 at 18).

On July 13, 2018, represented by assigned counsel M. Kirk Okay, Esq., Petitioner pleaded guilty pursuant to a plea agreement to the RICO conspiracy charged in count one. (Dkt. 1347; Dkt. 1351).  As part of the plea agreement, Petitioner admitted to, among other things:

- Petitioner was a member of the North Tonawanda KMC Chapter between 2009 and 2016;

- The KMC was a criminal organization whose leadership, members, and associates constituted an enterprise as defined by 18 U.S.C. § 1961(4), and operated pursuant to a strict hierarchical chain of command;

---

[2]    RICO refers to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*.

- The KMC members used marijuana, cocaine, methamphetamine, and other controlled substances in and around the North Tonawanda and the South Buffalo KMC Chapter Clubhouses, and Petitioner was aware of the drug trafficking;

- Petitioner possessed firearms, KMC members maintained access to firearms, and KMC members possessed and maintained firearms on their person and inside the KMC Chapter Clubhouses, including the North Tonawanda and South Buffalo KMC Chapter Clubhouses;

- KMC members were involved in firearm sales at various times; and,

- At least 60 kilograms but less than 80 kilograms of marijuana was the amount of converted drug weight involved in Petitioner's relevant conduct as to each of the clubhouses.

(Dkt. 1351 at ¶ 4; *see also* Dkt. 1719 at 21-28).  The plea agreement provided that the government and Petitioner agreed that the Sentencing Guidelines would recommend a prison sentence of 46 to 57 months (with an offense level of 23 and criminal history category of I), but the parties reserved the right to argue for a sentence outside that range. (Dkt. 1351 at ¶¶ 11-12).

The plea agreement included an appellate/collateral attack waiver, whereby Petitioner knowingly waived his "right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 11, above, notwithstanding the manner in which the Court determines the sentence."  (*Id*. at ¶ 19).[3]

---

[3]    The range in section III, paragraph 11 was "a term of imprisonment of 46 to 57 months, a fine of $20,000 to $200,000, and a period of supervised release of 1 to 3 years." (Dkt. 1351 at ¶ 11).

The Court engaged in the following colloquy with Petitioner during his plea hearing concerning this waiver:

> THE COURT:  [I]f I do sentence you within or less than the range that is set forth in paragraph 11, then you're waiving any right to appeal or collaterally attack that sentence.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  If you turn to paragraph 19 of the plea agreement, do you have that there in front of you?
>
> THE DEFENDANT:  Yes, I do.
>
> THE COURT:  This talks about your appeal rights, Mr. Stacharczyk.  If you were to go to trial, we have a trial scheduled to start next month, if you were to go to trial and you were convicted and then I sentenced you, you would have the right to appeal that conviction and any sentence that is imposed to the court above me.  It's called Second Circuit Court of Appeals.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  You'd also have some limited rights to what they call collaterally attack that conviction and any sentence that is imposed by bringing a proceeding before the Court where you were convicted.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  But you're agreeing, pursuant to the terms and conditions of this plea agreement, that if I sentence you within or less than 46 to 57 months in prison, a fine of $20,000 up to $200,000, and supervised release of one to three years, and then, of course, the $100 mandatory special assessment, you're waiving any right to appeal or collaterally attack that sentence.  Do you understand that?
>
> THE DEFENDANT:  Yes.
>
> THE COURT:  Do you have any questions for me or Mr. Okay up to this point?

THE DEFENDANT:  No.

(Dkt. 1719 at 13-14).

The Presentence Investigation Report (PSR) calculated an offense level of 25, as compared to the offense level of 23 projected by the plea agreement.  (Dkt. 1489 at ¶ 55). The reason for the disparity was that the plea agreement used the multiple count grouping rules pursuant to U.S.S.G. § 3D1.4, whereas the Probation Department used U.S.S.G. § 3D1.2(d).  (*Id*. at ¶ 57).  Taking the aggregate weight of converted drug weight based on 60 to 80 kilograms per clubhouse (for a total of at least 120 kilograms but less than 160 kilograms), and then adding two levels for the firearms and two levels for maintaining premises, led to a base offense level of 28.  (*Id*. at ¶ 35).  Both the two-level firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) and the two-level premises enhancement pursuant to U.S.S.G. § 2D1.1(b)(12) were agreed to as part of the plea agreement.  (Dkt. 1351 at ¶¶ 6-7).  In other words, it was the drug quantity attributable to the offense conduct that ultimately resulted in a different offense level than the one used in the plea agreement—not the firearms enhancement pursuant to § 2D1.1(b)(1).  (*See* Dkt. 1720 at 4).

On December 12, 2018, the undersigned sentenced Petitioner to 57 months in the custody of the Bureau of Prisons, followed by three years of supervised release.  (Dkt. 1482; Dkt. 1912).  The Court imposed the $100 special assessment, but otherwise waived any financial penalties.  (Dkt. 1912 at 6).

Notwithstanding the appellate waiver in the plea agreement, Petitioner filed a notice of appeal (Dkt. 1501), but thereafter moved to voluntarily withdraw his appeal (Dkt. 1915). The Second Circuit Court of Appeals dismissed the appeal on October 8, 2020. (*Id*.).

Petitioner filed the instant motion pursuant to § 2255 on September 27, 2021. (Dkt. 1941). The government responded on December 21, 2021. (Dkt. 1947). Although the Court granted Petitioner's repeated requests for extensions of time to file reply papers (Dkt. 1949; Dkt. 1951), Petitioner never filed any reply papers.

## III. **DISCUSSION**

Petitioner asserts two separate grounds[4] in support of his motion: (1) his attorney failed to "investigate witnesses and adduce evidence" demonstrating that Petitioner did not possess a firearm during the offense, leading to an improper two-level enhancement to the base offense level under the Sentencing Guidelines (Dkt. 1941 at 4); and (2) his attorney failed to "investigate witnesses and adduce evidence" demonstrating that Petitioner did not "tell others to refuse to cooperate with law enforcement or to appear to cooperate while lying to law enforcement," leading the Court to improperly find that Petitioner did so at sentencing (*id*. at 5). Petitioner does not assert any claim that his attorney was ineffective with respect to entry of his guilty plea; rather, Petitioner's ineffective assistance of counsel claims are limited to his attorney's performance in connection with sentencing. (*See id.* at

---

[4]        In his petition Petitioner identifies two grounds for relief (Dkt. 1941 at 4-5), but in his accompanying memorandum of law Petitioner states that there is a "sole issue" that he is raising (concerning the two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1)) (*id*. at 24). Given Petitioner's *pro se* status, the Court will construe the petition as raising the two grounds identified in the petition.

4 ("Defense counsel rendered ineffective assistance at sentencing"), 5 ("Defense counsel rendered ineffective assistance at sentencing"), 21 (acknowledging appellate/collateral attack waiver, but arguing that it does not apply to "an attack on whether Defense Counsel was ineffective in representing me at sentencing")).

The crux of Petitioner's claim is that he did not possess a firearm on August 3, 2014, prior to events occurring at the South Buffalo KMC Chapter Clubhouse, and therefore the firearm enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) should not have been applied in connection with the Sentencing Guidelines calculation. (*Id*. at 15-18, 20, 24-25). However, Petitioner concedes as part of his petition that he admitted to possessing firearms as part of his plea hearing (although he now denies possessing the firearms as part of KMC activities)[5] and he further admits that he knew other KMC members carried firearms, including inside clubhouses. (*Id*. at 14). Moreover, the PSR applied the two-level § 2D1.1(b)(1) enhancement, about which Petitioner now complains, "because the defendant was aware that KMC members possessed and maintained firearms on their person and inside KMC Chapter Clubhouses." (Dkt. 1489 at ¶ 35). Again, Petitioner concedes the accuracy of these facts in his petition. Petitioner's role with respect to the August 3, 2014, events at the South Buffalo KMC Chapter Clubhouse was not relevant to the § 2D1.1(b)(1) enhancement. The August 3, 2014 events were discussed at the time of

---

[5] The Court does not find credible Petitioner's contention that, in the context of discussing the KMC and his activities related to that organization, when he admitted at the plea hearing to possessing firearms, he was only admitting to possessing firearms at his home and not in connection with the KMC. (Dkt. 1941 at 14 n.1; *see* Dkt. 1719 at 24). But, as discussed herein, since Petitioner admits to knowledge about other KMC members' possession of firearms, it does not matter whether he personally possessed firearms.

sentencing, and there was no dispute that Petitioner was present. (Dkt. 1720 at 12-14). However, any other involvement that Petitioner had with respect to those events was not considered relevant for purposes of sentencing. (*Id.*).

Petitioner also argues that Paul Gilmore ("Gilmore") was present at his sentencing and willing to testify that Petitioner did not travel to the South Buffalo KMC Chapter Clubhouse with firearms, and furthermore Petitioner never attempted to influence his testimony. (Dkt. 1941 at 18-20).[6] Yet, contrary to Petitioner's implications, there was no enhancement applied under the Sentencing Guidelines for obstruction of justice. Indeed, Petitioner's counsel at sentencing identified that Gilmore was present and prepared to state that Petitioner advised everyone involved to cooperate with law enforcement (Dkt. 1720 at 18-19), but the government contended this differed from Gilmore's prior testimony before the grand jury (*id.* at 21-22).

A.     **Legal Standard**

A prisoner in federal custody may challenge the validity of his sentence by filing a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2255, to vacate, set aside, or correct his sentence. *See* 28 U.S.C. § 2255(a). "Section 2255 provides relief in cases where

---

[6]     Petitioner contends that neither he nor his attorney could respond to the government's representations at sentencing about a recording of a meeting involving Gilmore. (Dkt. 1941 at 19 n.2). However, the government in its response offers evidence that an audio recording of a meeting from October 8, 2014, along with a transcript, was produced to Petitioner's counsel and supported the government's argument that Petitioner and other KMC members attempted to influence Gilmore's testimony. (*See* Dkt. 1947 at 3-6; *see also* Dkt. 1947-2). In addition, prior to the plea hearing, the government identified for Petitioner's counsel evidence that supported its contention that Petitioner lied to law enforcement when questioned about his knowledge of the murders. (*See* Dkt. 1947-2 at 76-80).

the sentence: (1) was imposed in violation of the U.S. Constitution or the laws of the United States; or (2) was entered by a court without jurisdiction to impose the sentence; or (3) exceeded the maximum detention authorized by law; or (4) is otherwise subject to collateral attack." *Adams v. United States*, 372 F.3d 132, 134 (2d Cir. 2004) (citing 28 U.S.C. § 2255).

In reviewing a *pro se* petition for habeas corpus, the Court must be mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* [pleading], however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotations and citations omitted); *see also Williams v. Kullman*, 722 F.2d 1048, 1050 (2d Cir. 1983) ("[D]ue to the *pro se* petitioner's general lack of expertise, courts should review habeas petitions with a lenient eye. . . .").

## B.   <u>Collateral Attack Waiver</u>

As noted above, Petitioner waived his right to file a direct appeal or to bring a collateral challenge, including under 28 U.S.C. § 2255, of any sentence within or below "a term of imprisonment of 46 to 57 months, a fine of $20,000 to $200,000, and a period of supervised release of 1 to 3 years." (Dkt. 1351 at ¶ 11).  Petitioner's prison and supervised release sentence fell within that range, and the fine was waived.  (Dkt. 1912).

"A defendant's knowing and voluntary waiver of the right to appeal or collaterally attack his conviction and/or sentence is enforceable." *Sanford v. United States*, 841 F.3d 578, 580 (2d Cir. 2016).  There are a limited set of circumstances under which a court can set aside a collateral attack wavier, "such as (1) when the waiver was not made knowingly,

voluntarily, and competently, (2) when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, (3) when the government breached the plea agreement, or (4) when the sentencing court failed to enunciate any rationale for the [petitioner's] sentence, thus amounting to an abdication of the judicial responsibility subject to mandamus." *Id.* (alteration and citation omitted). Additionally, such a waiver is unenforceable if it "was the result of ineffective assistance of counsel[.]" *United States v. Monzon*, 359 F.3d 110, 119 (2d Cir. 2004).

Here, even reading his submissions liberally in light of his *pro se* status, Petitioner does not contend that any of the exceptions apply to enforceability of the collateral attack waiver. For example, Petitioner does not contend that his plea was not made knowingly, voluntarily, and competently, nor could he since he plainly entered into the plea in a knowing, voluntary, and competent manner. (*See generally* Dkt. 1719).[7] Similarly, Petitioner does not contend he received ineffective assistance of counsel in connection with the plea. Indeed, he acknowledged at the plea hearing that he was satisfied with his attorney's advice and he had sufficient time to discuss the plea agreement with him. (*Id.* at 5-7).

Rather than rely on one of the recognized exceptions to the enforceability of a collateral attack waiver, Petitioner argues that the waiver does not bar his claims because they are based on ineffective assistance of counsel at sentencing. (Dkt. 1941 at 21).

---

[7]     In fact, because Petitioner never pursued a direct appeal challenging the voluntariness of his plea, he has procedurally defaulted on any such claim in the context of this habeas petition. *See Tavarez v. United States*, 81 F.4th 234, 239 (2d Cir. 2023) (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

Contrary to Petitioner's logic, the Second Circuit has squarely held that a criminal defendant cannot avoid a waiver in a plea agreement by "dress[ing] up his claim as a violation of the Sixth Amendment" when he "in reality is challenging the correctness of his sentence under the Sentencing Guidelines[.]" *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (rejecting argument that plea waiver could be avoided where counsel failed to object to application of particular sentencing enhancements at the time of sentencing). And that is exactly what Petitioner is trying to do in this case. Courts regularly reject § 2255 petitions where, as here, the challenge is couched as an ineffective assistance of counsel claim in support of a claim directed to errors by a court in calculating and imposing a sentence that is within the scope of the collateral attack waiver. *See*, *e.g.*, *Cannonier v. United States*, No. 15-CR-95 (AJN), 2021 WL 809343, at *3-4 (S.D.N.Y. Mar. 3, 2021) (collecting cases).

The Court calculated Sentencing Guidelines different than those contained in the plea agreement because of the different grouping rule that was used, resulting in a higher drug quantity that was attributed to Petitioner's offense. Petitioner does not even address that issue in his petition. Instead, he focuses on the firearm two-level enhancement, but that enhancement was agreed to as part of the plea agreement—and had nothing to do with the events at the South Buffalo KMC Chapter Clubhouse on August 3, 2014. Petitioner "does not contend that he received ineffective assistance of counsel when entering into the plea agreement containing the [firearm enhancement], . . . an argument that might have provoked doubt about the validity of the . . . waiver." *Morales-Arambula v. United States*, No. 3:22-CV-323 (SRU), 2023 WL 2503052, at *4 (D. Conn. Mar. 14, 2023) (finding 2255

- 11 -

petition barred because petitioner was attacking sentence imposed). Because Petitioner is seeking to challenge this Court's Sentencing Guidelines calculations and ultimately the sentence that was imposed, he cannot circumvent the collateral attack waiver by characterizing his claim as one based on ineffective assistance of counsel. Petitioner has waived the challenges contained in the petition and that waiver is enforceable. Accordingly, Petitioner's § 2255 petition is barred.

### C.   <u>Merits of the Petition</u>

Even if Petitioner's petition was not barred by the collateral attack waiver, it still would fail. "The Sixth Amendment requires effective assistance of counsel at critical stages of a criminal proceeding." *Lafler v. Cooper*, 566 U.S. 156, 165 (2012). "Pursuant to the well-known two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), a habeas petitioner alleging ineffective assistance of counsel 'must demonstrate (1) that his counsel's performance fell below what could be expected of a reasonably competent practitioner; and (2) that he was prejudiced by that substandard performance.'" *Woodard v. Chappius*, 631 F. App'x 65, 66 (2d Cir. 2016) (quoting *Pearson v. Callahan*, 555 U.S. 223, 241 (2009)).

Petitioner alleges that it was error for his attorney not to present Gilmore to testify at his sentencing hearing because Gilmore could have clarified Petitioner's role in connection with the events at the South Buffalo KMC Chapter Clubhouse on August 3, 2014, and he would have testified that Petitioner did not attempt to influence his testimony. Petitioner's counsel acknowledged Gilmore's presence during the sentencing hearing but instead of calling him as a witness, told the Court that he would state that Petitioner told

everyone to cooperate with law enforcement (Dkt. 1720 at 18-19), and he would testify that Petitioner was not present when firearms were distributed in connection with the August 3, 2014 events at the South Buffalo KMC Chapter Clubhouse (*id*. at 12).

The decision "whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." *United States v. Nersesian*, 824 F.2d 1294, 1321 (2d Cir. 1987). Such decisions "if reasonably made, will not constitute a basis for an ineffective assistance claim." *Id.*; *see also United States v. Eyman*, 313 F.3d 741, 743 (2d Cir. 2002) ("A failure to call a witness for tactical reasons of trial strategy does not satisfy the standard for ineffective assistance of counsel."). "Counsel's decision to proceed with the sentencing hearing even though additional witnesses had not been located can be seen as a strategic decision to benefit petitioner." *Carlisle v. Herbert*, No. 01 CIV.11392(SAS), 2002 WL 1822735, at *4 (S.D.N.Y. Aug. 8, 2002) (concluding that not calling witnesses who testified at trial at sentencing hearing, and instead proceeding by proffer without subjecting the witnesses to cross-examination, was not objectively unreasonable).

With respect to the South Buffalo KMC Chapter Clubhouse events, there was no dispute that Petitioner was present at the events that day, but as the Court acknowledged at sentencing, nobody contended Petitioner was "in the thick of it." (Dkt. 1720 at 14). More importantly, the events of August 3, 2014, were irrelevant to the Court's Sentencing Guidelines calculations and two-level increase pursuant to U.S.S.G. § 2D1.1(b)(1) for firearms. The firearm enhancement was agreed to as part of the plea agreement and applied because of Petitioner's admitted knowledge of other KMC members' possession of

firearms at the clubhouses where drug trafficking activity was occurring. (*See* Dkt. 1472 at ¶ 35). Whether Petitioner personally possessed firearms in connection with the events of August 3, 2014—or even in connection with drug trafficking activity—was irrelevant to the application of that enhancement. *See United States v. Wynn*, 37 F.4th 63, 67 (2d Cir. 2022) ("[W]hen a defendant traffics narcotics as part of a larger 'narcotics conspiracy' that employs dangerous weapons 'in furtherance of the conspiracy,' 'the defendant need not have had personal possession, or even actual knowledge of the weapon's presence' in order to compel the application of section 2D1.1(b)(1)'s enhancement. Rather, in such a case, 'the enhancement is required so long as the possession of the firearm was reasonably foreseeable to the defendant.'" (citations omitted)). Thus, presenting testimony from Gilmore concerning the events of August 3, 2014, would not have impacted the calculations under the Sentencing Guidelines.

Concerning the alleged obstructive acts by Petitioner, the Court never made a finding that Petitioner obstructed justice. However, Petitioner admitted pursuant to his plea agreement that he was a member of the KMC and that the purposes of the organization included placing potential witnesses in fear of the enterprise, its members, and associates, through violence and threats of violence. (Dkt. 1351 at ¶ 4(b)). Moreover, there was evidence that the government contended supported a conclusion that Petitioner instructed witnesses to lie and did not cooperate with law enforcement. (*See* Dkt. 1947-2 at 77-80). Thus, it was perfectly reasonable for Petitioner's counsel to decide not to present a witness to testify, particularly a witness who had already testified before the grand jury and at the trial of co-defendants, and who would have been subjected to cross-examination and the

potential exposure of inconsistent testimony, which would not have worked to Petitioner's benefit. Moreover, the Court made no reference to any alleged obstruction of justice personally by Petitioner in its sentencing remarks. (*See* Dkt. 1720 at 27-36). Instead, as the Court remarked at sentencing, Petitioner held a leadership role in a criminal racketeering organization that was involved in a host of illegal activity, and ultimately that illegal activity led to two execution-style murders and the cover-up of those murders. But at no point did the Court suggest that Petitioner personally participated in the murders and cover-up, and in fact made it clear that it was not suggesting Petitioner had anything to do with the murders. (*Id*. at 33-34).

Accordingly, even if not barred by the collateral attack waiver, Petitioner's contention that his counsel was ineffective at sentencing for failing to present Gilmore as a witness fails. The decision not to present Gilmore as a witness—who had already testified at the trial of Petitioner's co-defendants and before the grand jury—cannot be said to have been objectively unreasonable. Indeed, it is far more likely that presenting Gilmore's testimony would have led to cross-examination and the exposure of inconsistencies, and that could have risked adverse determinations against Petitioner, whom the Court had already characterized as not seeming to fully embrace his own acceptance of responsibility. (*See* Dkt. 1720 at 23). Moreover, Petitioner has failed to establish that Gilmore's testimony would have had any impact on the sentence imposed. Indeed, it would not have. For all these reasons, the Court finds that Petitioner has not demonstrated ineffective assistance of counsel.

**IV.**     <u>**CONCLUSION**</u>

For the foregoing reasons, the Court denies Petitioner's § 2255 motion. (Dkt. 1941).

The Clerk of Court is directed to close Civil Action No. 1:21-CV-01055 EAW.

The Court declines to issue a certificate of appealability because Petitioner has failed to make a substantial showing of the denial of a constitutional right. *See* 28 U.S.C. § 2253(c).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:       December 28, 2023
               Rochester, New York