UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

                                      **DECISION AND ORDER**

        v.                                  1:15-cr-00142 EAW

GLENN STACHARCZYK a/k/a Turbo,

               Defendant.
_____

## I.    INTRODUCTION

Defendant Glenn Stacharczyk a/k/a Turbo ("Defendant") has filed a motion seeking early termination of his three-year term of supervised release, which commenced on January 20, 2022. (Dkt. 1982). In support of his motion, Defendant cites to his positive performance while incarcerated and serving the supervised release term (*id*. at ¶¶ 4-7), and notes that to "progress" further with his employment he must be able to have flexibility to travel outside the District (*id*. at ¶ 8). He also cites to his inability to visit a family cabin in the "spur-of-the-moment" and family members located outside the District (*id*. at ¶ 9), and the impediments to purchasing a reasonably-priced life insurance policy because he is under a criminal justice sentence (*id*. at ¶ 10).

The government opposes Defendant's motion. (Dkt. 1987). The government argues that "to this day, [Defendant] seemingly minimizes his conduct and demonstrates that he still has not changed his way of thinking. . . ." (*Id*. at 3). The government argues that

consideration of the relevant factors under 18 U.S.C. § 3553(a) warrants denial of the motion.

By memorandum dated January 4, 2024, the United States Probation Office communicated that it does not oppose the pending motion.

## II.   BACKGROUND

On March 16, 2016, Defendant was one of sixteen defendants[1] charged in a 46-count second superseding indictment involving organized crime related to operation of the Kingsmen Motorcycle Club ("KMC"). (Dkt. 33). Defendant was charged in the following six counts: (1) a RICO[2] conspiracy in violation of 18 U.S.C. § 1962(d) (count one); (2) possession of firearms in furtherance of the RICO conspiracy in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (count two); (3) using and maintaining premises for drug dealing in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2 (counts thirty-nine and forty-five); and (4) possession of firearms in furtherance of the maintaining the premises charges in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2 (counts forty and forty-six). (*Id.*). Part of the charged conspiracy related to two execution-style murders occurring at the North Tonawanda KMC Chapter clubhouse property on September 6, 2014. Defendant served as President of that KMC Chapter. (*See* Dkt. 1720 at 18).

---

[1]   Four additional defendants were subsequently charged in a separate indictment involving the same conspiracy. *See United States v. Long et al.*, Case No. 1:17-cr-00189-EAW-MJR, Dkt. 1 (W.D.N.Y. Oct. 4, 2017).

[2]   RICO refers to the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq*.

The Court severed Defendant from some of the others and three defendants went to trial before the undersigned commencing on January 16, 2018, and continuing through May 18, 2018. Those three defendants were each convicted of all counts with which they were charged. (Dkt. 1252; Dkt. 1258; Dkt. 1259). They were sentenced to incarceration terms spanning twenty years up to multiple life sentences. (Dkt. 1971; Dkt. 1972; Dkt. 1809).

On July 13, 2018, Defendant pleaded guilty pursuant to a plea agreement to the RICO conspiracy charged in count one. (Dkt. 1347; Dkt. 1351). As part of the plea agreement, Defendant admitted to, among other things:

- He was a member of the North Tonawanda KMC Chapter between 2009 and 2016;

- The KMC was a criminal organization whose leadership, members, and associates constituted an enterprise as defined by 18 U.S.C. § 1961(4), and operated pursuant to a strict hierarchical chain of command;

- The KMC members used marijuana, cocaine, methamphetamine, and other controlled substances in and around the North Tonawanda and the South Buffalo KMC Chapter Clubhouses, and Defendant was aware of the drug trafficking;

- Defendant possessed firearms, KMC members maintained access to firearms, and KMC members possessed and maintained firearms on their person and inside the KMC Chapter Clubhouses, including the North Tonawanda and South Buffalo KMC Chapter Clubhouses;

- KMC members were involved in firearm sales at various times; and,

- At least 60 kilograms but less than 80 kilograms of marijuana was the amount of converted drug weight involved in Defendant's relevant conduct as to each of the clubhouses.

(Dkt. 1351 at ¶ 4; *see also* Dkt. 1719 at 21-28).

On December 12, 2018, the undersigned sentenced Defendant to 57 months incarceration (at the low end of the calculated Sentencing Guidelines range), followed by three years of supervised release. (Dkt. 1482; Dkt. 1497; Dkt. 1912). The Court imposed the $100 special assessment, but otherwise waived any financial penalties. (Dkt. 1912 at 6).

Although Defendant's plea agreement contained an appellate waiver for a sentence within the range imposed by the Court, he filed a notice of appeal (Dkt. 1501), but then elected not to pursue the appeal (Dkt. 1915). Defendant also sought compassionate release from prison pursuant to 18 U.S.C. § 3582(c)(1)(A) (Dkt. 1919), but the Court denied the motion (Dkt. 1928). Defendant sought reconsideration of that determination (Dkt. 1931) but the Court denied that motion (Dkt. 1932). Defendant filed a notice of appeal from those compassionate release determinations (Dkt. 1935), but then apparently did not pursue that appeal (Dkt. 1953). Defendant also filed a petition pursuant to 28 U.S.C. § 2255 (Dkt. 1941), which was denied by the Court (Dkt. 1984).

## III.   DISCUSSION

Section 3583(e)(1) of Title 18 of the United States Code states, in relevant part, as follows:

> The court may, after considering the factors set forth in section 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7) . . . terminate a term of supervised release and discharge the defendant released at any time after the expiration of one year of supervised release, pursuant to the provisions of the Federal Rules of Criminal Procedure relating to the modification of probation, if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice. . . .

Pursuant to the express terms of § 3583(e)(1), the general rule is that at least one year of supervised release must have been served, the applicable factors set forth at 18 U.S.C. § 3553(a) must be considered, and a court must be satisfied that the requested early termination is warranted by the conduct of the defendant and the interest of justice. But simply complying with the terms of supervised release does not generally justify early termination. *See*, *e.g.*, *United States v. Rusin*, 105 F. Supp. 3d 291, 292 (S.D.N.Y. 2015) ("Early termination is not warranted where a defendant did nothing more than that which he was required to do by law."); *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998) ("While [defendant's] . . . post-incarceration conduct is apparently unblemished, this alone cannot be sufficient reason to terminate the supervised release since, if it were, the exception would swallow the rule.").[3]

Here, the nature and circumstances of the offense counsel in favor of denying the motion. Defendant was the leader of a criminal organization involved in heinous activity, including crimes against women, drug trafficking, firearms offenses, and two execution-style murders of two KMC members for allegedly being disloyal. The murders took place at the clubhouse where Defendant served as president. While there was no proof that

---

[3]  Defendant cites to *United States v. Parisi*, 821 F.3d 343 (2d Cir. 2016) in support of his motion and argues that it stands for the principle that new or changed circumstances or exceptionally good behavior is not required to justify early termination of supervised release. (Dkt. 1982 at ¶ 17). *Parisi* actually dealt with a court's modification of supervised release conditions to comply with the district's standard conditions, and an appeal from the same by the defendant—as opposed to a motion to terminate supervised release. In any event, the Court agrees that although exceptionally good behavior or extraordinary circumstances may justify early termination of supervised release, it is not necessarily a prerequisite to early termination. *See generally United States v. Melvin*, 978 F.3d 49, 53 (3d Cir. 2020).

Defendant was personally involved in the murders, the Court strongly rejects his contention that the club was a lawful organization that included some illegal activities at the national level. (*See* Dkt. 1982 at ¶ 2). Having presided over a trial spanning four months involving his co-defendants, the Court is well aware that illegal activity permeated the organization. Defendant's attempt to distance himself from that criminal activity causes the Court to have grave concerns that still to this day, Defendant does not appreciate the significance of his criminal activity.

In terms of Defendant's history and characteristics, by all accounts Defendant is doing well on supervised release. And the Court has considered Defendant's arguments as to the impact that the travel restrictions have on his employment. However, the Court is hard-pressed to conclude without more information from Defendant, that the minor inconvenience of seeking approval for travel outside the District has interfered with his ability to "progress" in his job at Mavis. Defendant "has not established that he has ever been denied the opportunity to travel, nor has he explained how the terms of his supervised release have 'even [had] an intangible impact' on his employment."[4] *United States v. Gonzales*, No. 94-CR-0134, 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015). Furthermore, the fact that Defendant cannot take "spur-of-the-moment" personal trips is

---

[4] Defendant cites to one instance last summer where he "had to pass on attending additional training because the opportunity arose with only a few days' notice and would have required travel outside of the District," but Defendant does not indicate that he tried to request approval for this travel from the Probation Office, which he acknowledges has always been "very professional and accommodating" of his requests. (Dkt. 1982 at ¶ 8).

all part and parcel of the fact that he has been convicted of a serious crime and is serving a sentence of supervised release related to that crime.

The Court has considered the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of Defendant.  Again, Defendant appears to be doing well on supervised release, but the Court is concerned over his efforts to minimize his criminal conduct.

The Court has also considered the other applicable § 3553(a) factors,[5] and concludes that they counsel against granting Defendant's motion.  Moreover, to reduce the term of supervised release would not be in the interest of justice.  Defendant has less than one year left to serve on supervised release, and terminating it would undermine the legitimate goals of the sentence as originally imposed.

---

[5] Defendant's claims about life insurance are inconsistent.  He states that he was denied a policy because he is under a criminal justice sentence, but then in the same paragraph states that "reasonably priced policies are not available" as long as he is on supervised release. (Dkt. 1982 at ¶ 10).  In other words, it would appear that Defendant is able to obtain a life insurance policy, but it is at a higher price than he would prefer.  Without more, the Court is not persuaded that this justifies early termination of supervised release.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion for early termination of his supervised release term. (Dkt. 1982).

SO ORDERED.

ELIZABETH A. WOLFORD
Chief Judge
United States District Court

Dated:  February 27, 2024
        Rochester, New York